**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

GERMAILL McKNIGHT,
                Petitioner,

      v.                                      No. 03-CV-1195
                                                        (LEK/DRH)
GARY GREENE,
                Respondent.
_____

**APPEARANCES:**                                  **OF COUNSEL:**

GERMAILL McKNIGHT
Petitioner Pro Se
No. 98-A-4978
Great Meadow Correctional Facility
Post Office Box 51
Comstock, New York 12821

HON. ELIOT SPITZER                         GERALD J. ROCK, ESQ.
Attorney General for the                     Assistant Attorney General
   State of New York
Attorney for Respondent
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Petitioner Germaill McKnight ("McKnight") is currently an inmate in the custody of the

New York State Department of Correctional Services (DOCS) at Great Meadow

Correctional Facility. McKnight was found guilty on April 24, 1998 of murder in the second

degree and criminal facilitation in the second degree after a jury trial in Albany County

Court. McKnight was sentenced to a total indeterminate term of twenty-five years to life

---

      [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

imprisonment and is currently serving that sentence. McKnight now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that there was insufficient evidence to support the conviction, improper jury instructions, prosecutorial misconduct, and that the trial court erred in denying his motion to vacate the conviction without a hearing. For the reasons which follow, it is recommended that the petition be denied.

### I. Background

On April 20, 1997, John Alston and Tyrone Germany began fighting on Orange Street, in Albany, New York in an ongoing dispute over a woman. T. 206-08, 215-16.[2] McKnight, who had been riding in a car with Alston prior to the fight, ran to a nearby apartment, grabbed a loaded handgun, and returned to the scene where Alston and Germany were continuing to fight. T. 123, 151, 210-17. McKnight gave the gun to Alston, who fired the gun and killed Germany. T. 24-49, 52-82, 220-22.

McKnight was arrested, indicted, convicted, and sentenced as indicated above. The Appellate Division affirmed his conviction. People v. McKnight, 761 N.Y.S. 2d 695 (3d Dep't 2003). Application for leave to appeal to the New York Court of Appeals was denied on August 5, 2003. People v. McKnight, 100 N.Y.2d 593 (2003). This action followed.

### II. Discussion
### A. Legal Standards

A federal court may grant habeas relief only if the state court proceedings "resulted

---

[2] "T" followed by a number refers to the pages of the trial transcript included with respondent's answer. Docket No. 11.

2

in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) (1996). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law . . . ." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., writing for the Court in Part II of her opinion). Under the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.

"To adjudicate a claim on the merits, the state court need not mention the argument raised or cite relevant case law . . . or even explain[] its reasoning process . . . . Rather, a state court adjudicates a claim on its merits by (1) dispos[ing] of the claim on the merits, and (2) reduc[ing] its disposition to judgment." Eze v. Senkowski, 321 F.3d 110, 121 (2d Cir. 2003) (internal quotation marks and citations omitted). "A state-court decision is 'contrary to' [the Supreme Court's] clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Early v. Packer, 537 U.S. 3, 8 (2002) (internal quotation marks omitted) (citing Williams, 529 U.S. at 405).

## B. Exhaustion

As a threshold matter, respondent contends that McKnight has failed to exhaust his state court remedies because he did not apprise the state court of the federal nature of his claims. A habeas petitioner must exhaust all state court remedies before seeking federal habeas corpus relief. Duckworth v. Serrano, 454 U.S. 1, 3 (1981); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994); 28 U.S.C. § 2254(b), (c). Exhaustion requires that a petitioner both "fairly present" federal constitutional claims to the highest state court and utilize all available avenues of appellate review within the state before proceeding to federal court. Dorsey v. Kelly, 112 F.3d 50, 52 n.1 (2d Cir. 1997); Bossett, 41 F.3d at 828. A petitioner may fairly present claims by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, or (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of New York, 696 F.2d 186, 194 (2d Cir. 1982); see also Gray v. Netherland, 518 U.S. 152, 153 (1996); Jones v. Vacco, 126 F.3d 408, 413 (2d Cir.1997)

On direct appeal, McKnight's brief relied exclusively on state cases that did not employ constitutional analyses. The brief did not frame these issues in constitutional terms and the arguments relied on therein were based entirely on alleged errors of state law and were resolved based on state law. In addition, the Appellate Division's decision rested solely on state law with no constitutional or federal issues decided. McKnight did not, therefore, alert the state court to the constitutional nature of his claims.

Where, as here, a petitioner's state court remedies are exhausted, a claim may be considered in a habeas petition only if the petitioner has demonstrated cause for and prejudice from the default, or that a miscarriage of justice will result if the claim is not reviewed. Murray v. Carrier, 477 U.S. 478, 492 (1986). McKnight has demonstrated no cause for his procedural default of this claim nor any prejudice therefrom. Moreover, no miscarriage of justice can be shown here where the evidence adduced at trial precludes any claim of actual innocence.

Therefore, the claims in the petition should all be denied on this ground.

### C. Insufficient Evidence

As to the merits of McKnight's petition, McKnight contends first that there was insufficient evidence at trial to support the verdict. Respondent contends that the evidence was legally sufficient to support McKnight's conviction.

To challenge a conviction on the ground that it was against the weight of the evidence, a defendant bears the "heavy burden" of showing that in considering all of the evidence in the light most favorable to the prosecution, no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Grubczak, 793 F.2d 458, 463 (2d Cir.1986). A federal habeas court must "credit[] every inference that the jury might have drawn in favor of the government" and defer to the jury's determinations and assessments of credibility. United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003). Any challenge to the weight of the evidence and credibility of witnesses is for the jury to decide and does not afford a ground for reversal. United States v. Velasquez, 271 F.3d 364, 370 (2d Cir. 2001); Fama

5

v. Commissioner of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).

A federal court must look to state law to determine the elements of the crime when considering the sufficiency of the evidence of a state conviction. Fama, 235 F.3d at 811. Here, McKnight was convicted of second degree murder in violation of N.Y. Penal Law § 125.25(2) and criminal facilitation in the second degree in violation of N.Y. Penal Law § 115.05. A person is guilty of murder in the second degree when with intent to cause the death of another person, he or she causes the death of such person. N.Y. Penal Law § 125.25 (McKinney 2004). A person is guilty of criminal facilitation in the second degree when, "believing it probable that he is rendering aid to a person who intends to commit a class A felony, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit such class A felony." N.Y. Penal Law § 115.05 (McKinney 2004).

McKnight argues that the evidence at trial was insufficient to establish that he had the requisite intent to cause the death of Germany. When intent is an element of a crime, "its existence must be inferred by considering the laws that generally govern human conduct." Mallette v. Scully, 752 F.2d 26, 32 (2d Cir. 1984). "Intent may be inferred from the defendant's conduct and the surrounding circumstances." Vera v. Hanslmaier, 928 F. Supp. 278, 284 (S.D.N.Y. 1996). This inference may be drawn from all the circumstances of the case, including circumstantial evidence, and the jury's common sense. See Holland v. United States, 348 U.S. 121, 140 (1954).

McKnight argues that he lacked knowledge that Alston intended to kill Germany and that his intent was only to scare him. The record reflects that there was ample evidence for the jury to conclude that McKnight had the intent to cause the death of Germany when he

6

handed the gun to Alston. The shooting would not have taken place had McKnight not retrieved and furnished the gun to Alston.

Several witnesses described the fight, Alston losing the fight, McKnight leaving the scene and returning, standing in front of Alston, and handing the gun to Alston. T. 30, 53, 106, 146. McKnight ran from the scene, kicked in the door of a house, climbed on a chair, grabbed the loaded gun, put it in the back of his pants, ran back to the scene, and gave the gun to Alston. T. 323-24. Alston testified that McKnight handed him the gun, that he used the gun to shoot Germany, and that if McKnight had not given him the gun, the shooting would not have happened. T. 220-21, 244-45.

Given the nature of the fight between Alston and Germany and their past relationship, and McKnight's friendship with Alston, the jury could reasonably infer that McKnight was aware that Alston would use the gun to shoot Germany. The gun was loaded and the evidence, viewed in the light most favorable to the prosecution, supports a finding that McKnight could knew that Alston would use the gun. In addition, the Appellate Division's decision on this matter on the merits was not contrary to federal law and did not involve an unreasonable interpretation of the facts.

The petition on this ground should be denied in the alternative on the merits.

### D. Jury Instructions

In points two and three of his petition, McKnight contends that the trial court erred in instructing the jury. Respondent contends that these claims provide no basis for habeas corpus relief.

"In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985). In weighing the prejudice from an allegedly improper charge, a reviewing court must view the instruction in its totality. Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. at 147.

In point two of his petition, McKnight contends that the trial court erred in refusing to give a circumstantial evidence instruction. Under New York law, in criminal cases that rely exclusively on circumstantial evidence, the facts from which the inference of the defendant's guilt may be drawn must exclude to a moral certainty every other reasonable hypothesis. The "moral certainty" standard does not apply to a situation where both direct and circumstantial evidence are offered at trial. People v. Barnes, 50 N.Y.2d 375, 379-80 (1980); see also Pilgrim v. Keane, No. 97 CV 1516 (SJ), 2004 WL 1810344, at *9 (E.D.N.Y. Aug. 9, 2004). Here, the case against McKnight was not entirely circumstantial. There was direct evidence in the form of eyewitness testimony. Accordingly, any refusal to include a circumstantial evidence charge was in accordance with New York law and did not violate McKnight's due process rights.

In point three of his petition, McKnight contends that the trial court failed properly to instruct the jury regarding a witness' prior inconsistent statement. "Where a trial court has failed to instruct the jury that a prior inconsistent statement may be used only for impeachment purposes and not as direct evidence, such error has been held harmless by

8

courts on direct appeal where there is overwhelming evidence of petitioner's guilt." Bradford v. Keane, No. 94-4665 DGT, 1996 WL 361593, at *17 (E.D.N.Y. June 3, 1996); People v. Hynes, 146 A.D.2d 587, 587 (2d Dep't 1989).

McKnight points to Carolyn McLaughlin's trial testimony which conflicted with her identification of McKnight in a statement she gave to the Albany Police immediately following the shooting. While the trial court did not give a specific instruction regarding McLaughlin's testimony, the court did give an instruction that generally addressed conflicting testimony and other factors which may be considered in assessing the credibility of witnesses. T. 492-98. Here, the impeaching testimony was not extremely damaging and McKnight's identity was established by several other witnesses. Further, a review of the entire jury charge indicates that it was not so prejudicial as to affect fundamentally McKnight's right to a fair trial.

In addition, the Appellate Division considered this claim and found that the instructions were proper under New York law. There is no indication that this decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence in the State court proceeding." 28 U.S.C. § 2254(d)(1).

Therefore, the petition on this ground should be denied in the alternative on its merits.

### E. Prosecutorial Misconduct

McKnight contends that the prosecutor made improper remarks during summation. Respondent contends that there is no basis for relief on this claim.

9

The Due Process Clause of the Fourteenth Amendment guarantees defendants the right to a fair trial. U.S. Const. amend. XIV, § 1. Prosecutorial misconduct violates this due process right when the misconduct alleged is so severe and of sufficient significance to infect the trial resulting in the denial of the defendant's right to a fair trial. Greer v. Miller, 483 U.S. 756, 765 (1987); Blissett v. Lefevre, 924 F.2d 434, 440 (2d Cir. 1991). In evaluating a claim of prosecutorial misconduct, the alleged misconduct must be placed in context and the court should consider the severity of the alleged misconduct, the curative measures taken, and the likelihood of conviction absent any misconduct. Blissett, 924 F.2d at 440. The court should then determine if the petitioner has shown actual prejudice in light of the totality of the circumstances surrounding the trial. Samuels v. Mann, 13 F.3d 522, 526-27 (2d Cir. 1993).

McKnight contends that the prosecution made statements that McKnight did not take responsibility for his actions, referred to the evidence as uncontroverted, labeled defense arguments as red herrings, made demeaning comments, and appealed to the jurors' emotions. T. 448-82. A review of the record indicates that the prosecution summation did not deny McKnight a fair trial. Reference to the defense's arguments, characterizations of McKnight, and reference to the seriousness of the crime are permissible as are any rhetorical comments. Jones v. Keane, 250 F. Supp. 2d 217, 237 (W.D.N.Y. 2002)

In addition, McKnight's counsel challenged the allegedly improper comments. The trial court noted that McKnight's counsel also made similar comments and both sides were given latitude in this respect. T. 482-85. Prior to summations, the trial court cautioned the jury that anything said in summation was not considered evidence T. 414. The jury instructions included a warning that the case was to be decided on the evidence alone. T.

10

414. There is no indication that the prosecution's summation deprived McKnight of a fair trial.

The petition on this ground should alternatively be denied on the merits.

### F. Post-Conviction Proceedings

McKnight contends that the trial court erred in denying his motion to vacate the conviction without a hearing. Respondent contends that this claim is not cognizable in this proceeding.

While the Second Circuit has not specifically addressed this issue, district court decisions within the circuit have held that challenges to post-conviction proceedings are not cognizable in habeas proceedings. Jones v. Barkley, No 99-CV-1344, 2004 WL 437468, at *3 (N.D.N.Y. Feb. 27, 2004) (Sharpe, J.); Diaz v. Greiner, 110 F. Supp. 2d 225, 235 (S.D.N.Y. 2000); Franza v. Stinson, 58 F. Supp. 2d 124, 152 (S.D.N.Y. 1997); Sparman v. Edwards, 26 F. Supp. 2d 450, 468 n.13 (E.D.N.Y. 1997). Thus, McKnight's' assertion that the failure to hold a hearing on his post-conviction motion violated due process is not cognizable on federal habeas review. Jones v. Duncan, 162 F. Supp. 2d 204, 217-19 (S.D.N.Y. 2001).

Regardless, McKnight's claim lacks merit. In his motion, McKnight argued that there was newly discovered evidence favorable to his defense. R. on Appeal at 72-92. The newly discovered evidence was an affidavit by Chester Jones stating that Alston told him that he falsely implicated McKnight. Id. at 181. The trial court denied McKnight's motion on the ground that McKnight's submission was not newly discovered evidence and was merely

11

impeaching or contradictory evidence that would not likely have changed the result of the trial. Id. at 187.

This decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law" and was not based on "an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings." 28 U.S.C. § 2254(d)(1). Witnesses other than Alston established that McKnight supplied the gun to Alston. Any inconsistencies in statements by witnesses regarding the identification of McKnight as the source of the gun was brought out in cross-examination as was any deal made with the prosecution. Jones' affidavit was insufficient to create any probability of a verdict favorable to McKnight if a new trial was granted.

Therefore, the petition on this ground should be denied in the alternative for these reasons.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Secretary of HHS. 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: May 5, 2005
        Albany, New York

David R. Homer
United States Magistrate Judge